UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOSE A. FLORES, JR., ET AL | CIVIL ACTION NO. 16-cv-0856 |
| VERSUS | JUDGE HICKS |
| DONNA F. PAYNE, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

This is a suit to rescind the sale of a home located in Minden, Louisiana. Plaintiffs Jose A. Flores, Jr. and Paula Jean Campbell-Flores (the "Buyers") were the purchasers of the property. Defendant Donna Payne ("Payne") was the seller. Defendant Jan Frye & Associates, LLC ("Jan Frye") was the listing agency on the sale of the property and served as agent for both the buyer and seller. Defendant Christy Frye Branch ("Branch") was the real estate agent employed through Jan Frye. Defendant Cholla Ardoin ("Ardoin") was the appraiser who provided an appraisal on the property.

Before the court is Ardoin's **Motion to Dismiss. Doc. 16.** For the reasons that follow, it is recommended that the motion be granted.

### Plaintiffs' Allegations

The allegations of the Buyers' complaint, which must be taken as true for the purpose of the pending motion to dismiss, are as follows. The Buyers, residents of California, traveled to Minden, Louisiana, to look for a home. While in Minden, they saw a sign in front

of the property at 709 Elm Street in Minden that indicated the property was for sale and that Branch was the listing agent. Jan Frye was the real estate agency. Complaint at ¶ 5. The Buyers contacted Branch, who led them on a 20 to 30 minute walk-through of the property.

Before the Buyers returned home to California, they emailed Branch and notified her that they wanted to make an offer on the property. They met with Branch and the owner of Jan Frye and decided to make an offer of $195,000.

After the Buyers had returned to California, they received an email notifying them that Payne, the owner of the property, had accepted their offer. They were also sent a Property Disclosure Statement, a Lead Paint Disclosure Statement, and an agreement by which Branch would be both the listing and selling agent on the property. Complaint at ¶ 9.

Branch also sent a Purchase and Sell Agreement to the Buyers. The agreement had already been filled in. The draft provided that the Buyers would have "zero" days to conduct an inspection of the property and that they were accepting the property "as is." Complaint ¶ 11. Branch assured the Buyers that (1) the owner was required to disclose in the Property Disclosure Statement everything that would be done in an inspection and (2) the home was being purchased through a VA loan such that minimum property requirements had to be met. Complaint at ¶ 12.

The Buyers questioned Branch about the inspection, and Branch continued to ensure the Buyers that they could rely on the Property Disclosure Statement by the seller, Payne, as well as the inspection report. (The references to an inspection report are not clear from the allegations. The court assumes no real inspection was done.) Branch forwarded to the

Buyers a statement by which the Buyers would acknowledge that there had been an inspection of the property and further acknowledge that the Buyers waived any claim they had against the listing agent, the selling agent, and/or the owner of the house with regard to any structural defects. The Buyers expressed their reluctance at the wording in the document but noted that "they would trust their agent, Ms. Branch, in moving forward with the sale of the property and in executing [the] document." Complaint at ¶ 14.

Ardoin, the appraiser, was retained by the real estate agent to provide an appraisal. He was notified that the financing would be done pursuant to a VA loan, such that minimum property requirements would be required. Complaint at ¶ 16. Ardoin appraised the home at $195,000.

After the closing, the Buyers contacted Allstate Insurance Company for continued homeowner's coverage. Allstate inspected the premises and indicated that there were problems that needed to be addressed before Allstate would continue to provide coverage. Complaint at ¶ 18. The problems included defects in the porch, the railing, and the roof, which the Buyers were required to correct in order to obtain insurance.

Months later, the Buyers consulted a home inspector, A. J. Raynor, who conducted an inspection on the home and found numerous defects. The Buyers filed this suit to rescind the sale and recover their damages.

**Rule 12(b)(6) Standard**

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R.

Civ. P. 12(b)(6).  In deciding a motion to dismiss, the court accepts as true the well-pleaded factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.  Hunter v. Berkshire Hathaway, Inc., 2016 WL 3710253, at *3 (5th Cir.).

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face.  Brand Coupon Network, L.L.C. v. Catalina Marketing Corp., 748 F.3d 631, 637-38 (5th Cir. 2014).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Culbertson v. Lykos, 790 F.3d 608, 616 (5th Cir. 2015).  A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action."  Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

**The Motion to Dismiss**

Before the court is a motion to dismiss filed by Cholla Ardoin, the appraiser.  The motion argues that the purpose of the appraisal was to satisfy the lender that the house possessed sufficient value to serve as collateral on The Buyers' mortgage.  Ardoin argues that he was not hired by the Buyers; he was hired by the lender.  Therefore, Ardoin had no relationship to the Buyers and had no duty to them in either contract or negligence.

**Analysis**

The Buyers attempt to defeat Ardoin's motion to dismiss primarily based on the unique requirements of a VA loan. The Buyers admit they did not hire Ardoin to perform the appraisal but, they argue, the VA appraisal requirements pertain not only to the value of the home but also to the condition of the home. According to The Buyers, Ardoin clearly represented to the Buyers that, subject to certain cosmetic repairs, the property met the VA's minimum property requirements. Doc. 18, p. 4. According to the Buyers:

> The VA appraisal process does not extend a duty solely to the lender. If that were the case, the VA appraisal might have only one purpose - - to determine the home's fair market value. The VA appraisal process goes further and requires that the property meet the VA's minimum property requirements. It is a protection for Veterans established as a duty by the appraiser to confirm that the home meets these minimum property requirements and is safe and move-in ready, ... .

Doc. 18 at 4-5.

The only case cited by the Buyers in opposition to the motion to dismiss is Barrie v. V.P. Exterminators, 625 So.2d 1007 (La. 1993). In Barrie, the court was faced with the question of whether a state licensed termite inspector has a duty to use reasonable care and competence in rendering its statutorily required wood-destroying insects report in connection with the sale of a home, so as to protect the purchaser for whose benefit and guidance the information was sought and supplied, but who had no contractual privity or direct contact with the inspector. Id. at 1008.

The Barrie court noted that whether it is privity of contract or a fiduciary relationship, the courts have found a duty owed to the tort victim under factual scenarios of both non-

disclosure and misinformation. Id. at 1015. However, in cases where privity of contract is absent, finding a duty has been limited to cases of misinformation, whether it was a communication of the misinformation by the tortfeasor directly to the user or the user's agent.

The result in Barrie was to extend the duty scenario slightly. In re: FEMA Trailer Formaldehyde Products Liability Litigation, 838 F.Supp. 2d 497, 509 (E.D. La. 2012). Although Barrie was a case of misinformation (as opposed to non-disclosure), the defendant had not delivered the report directly to the plaintiff or the plaintiff's agent or otherwise had contact with the the Buyers, as had been the case in previous scenarios where courts had extended a contractual duty beyond the contract. The Court concluded that the inspector nevertheless owed a duty to the the Buyers because they were known to the inspector as the intended users of the report. Barrie, at 1016. The purchasers' use of the termite inspection report was not merely one possibility among many, but the end and aim of the transaction. The seller had contracted for the report solely for the purpose of providing it to the buyers to give them assurance regarding the condition of the dwelling, and the inspector knew this. In reaching its holding, the Court emphasized that Louisiana's approach to negligent misrepresentation has been and continues to be a case-by-case analysis of the duty/risk analysis. Id. at 1016.

The Buyers have cited no cases where a court has extended Barrie to permit claims by purchasers against appraisers. To the contrary, in Lemaire v. Breaux, 788 So.2d 498, 503 (La. App. 5th Cir. 2001), a homeowner sued an appraiser on grounds that his inspection and

report to the mortgage lender had failed to uncover the presence of roof damage. The Court dismissed the claim, holding that while the appraiser owed a contractual duty to the lender, it owed no duty whatever to the buyers. See also Thomas v. Livingston Parish Sheriff's Office, 923 So.2d 662, 668 (La. App. 1st Cir. 2005) (appraiser who prepared allegedly improper appraisal report was hired by sheriff on behalf of seizing creditor and therefore owed no duty to the judgment debtor).

Similarly, in Audler v. CBC Innovis, 519 F.3d 239, 249-254 (5th Cir. 2008), a homeowner who suffered flood damage in Hurricane Katrina sued the company that had provided the flood zone determinations to his lender. The homeowner asserted claims for negligent misrepresentation and failure to warn. The Fifth Circuit dismissed both claims, holding that the company did not owe the home buyer a duty under Louisiana law to provide a correct flood zone determination.

The Buyers attempt to stretch the duty to the buyers by emphasizing the minimum property requirements of VA home loans. But the allegations of the complaint show the Buyers knew that there was a difference between an appraisal and an inspection. In fact, the Buyers agreed to have "zero" days to conduct an inspection. Complaint at ¶ 11. Additionally, the agent, Branch, forwarded to the Buyers a statement by which Buyers would acknowledge that there had been an inspection of the property. Complaint at ¶ 14. While the Buyers expressed reluctance at the wording in the document, they apparently signed it anyway because they trusted their agent. Id.

Based on the foregoing, the court concludes that Ardoin had no duty to the Buyers, and that Ardoin's duty extended only to the VA lender.  If Louisiana is going to extend a duty to a point where it has never been extended before, such a change should come from the Louisiana legislature or the Louisiana Supreme Court. In re Whitaker Construction, 411 F.3d 197, 209 (5th Cir. 2005)(As an Erie court "[i]t is incumbent upon us to avoid creating new rights and remedies in Louisiana state law where we lack express statutory authority or clear directive from the Louisiana Supreme Court.").  The best exercise of this court's discretion under the current state of Louisiana law is to find that no duty existed.

Accordingly,

**IT IS RECOMMENDED** that Ardoin's **Motion to Dismiss (Doc. 16)** be **granted** and that all claims against Ardoin be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of July, 2017.

_____
Mark L. Hornsby
U.S. Magistrate Judge