**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JOSE A. FLORES, JR. AND PAULA JEAN CAMPBELL FLORES | CIVIL ACTION NO. 16-0856 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DONNA F. PAYNE, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Christy Frye Branch and Jan Frye & Associates, LLC's (collectively "Branch") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. See Record Document 34. Plaintiffs Jose A. Flores, Jr. and Paula Jean Campbell Flores ("Plaintiffs") oppose the motion. See Record Document 43. Branch seeks dismissal of all of Plaintiffs' claims. For the reasons set forth below, Branch's motion is hereby **DENIED**.

**I.   BACKGROUND**

Plaintiffs bring this action alleging claims for fraud and negligent representation against Branch arising from a residential property transaction in which Branch represented them as their real estate agent. Plaintiffs, who are California residents but sought to purchase a home in Minden, Louisiana, employed Branch's services in purchasing the property at issue in this case, located at 709 Elm Street in Minden, Louisiana. See Record Document 55 at 2, Proposed Pretrial Order. On April 17, 2015, Plaintiffs met with Branch at the property where they conducted a "walk through" of the house that lasted roughly 30 minutes. Id. at 3.

On April 18, 2015, Plaintiffs, assisted by Branch, made an offer on the Elm property and completed a Louisiana Residential Agreement to Buy or Sell as directed by Branch.

See id. at 4. Later that same day, Branch emailed to Plaintiffs several documents, including a property disclosure statement by the seller of the home, Donna F. Payne ("Payne"), on her behalf. Branch also included in her email to Plaintiffs a dual agency agreement, as Branch was the agent for both the seller and Plaintiffs in this transaction. See id. On April 21, 2015, Plaintiffs returned the signed and initialed offer to Branch without any modifications, after which an appraisal was completed by Cholla Ardoin ("Ardoin") on May 25, 2015 pursuant to the Veterans Administration ("VA") rules governing VA financing. Id. at 4. Ardoin also conducted an inspection of the home for compliance with these rules and stated in his report that, after completion (of specified repairs), the home would meet the VA's requirements. Id. In addition, a termite inspection was performed on the house that revealed damage from a prior infestation, which was then later inspected a second time by a Laura H. Stanley ("Stanley") of LaState Construction. See id. at 4-5.

The closing of the sale occurred on June 18, 2015, and after a more detailed inspection of the property upon moving into the house in August, Plaintiffs maintain they first became aware of alleged unsafe conditions of the house that rendered it uninhabitable. See Record Document 34-1 at 14. Plaintiffs described several problems they learned of, including the sealed windows that could not be opened, the rotting wooden porch floor, mold-covered interior walls, a moist crawl space with a water-stained floor, and uninsulated plumbing under the house. Id. at 14-15. Plaintiffs then returned to California and subsequently hired Andrew J. Rayner ("Rayner"), a licensed home inspector who is also Plaintiffs' expert witness in this case; Rayner conducted a post-sale inspection of the house on March 7, 2016. See id. at 14, 16. Rayner has testified that his

inspection revealed many of the conditions complained of by Plaintiffs. He further opined that while the conditions were easily discoverable to him due to his experience as a home inspector, many of the conditions would likely go unnoticed by the ordinary home buyer. See Record Document 42 at 2-3. Furthermore, it is worth noting that Plaintiffs had initially sued the seller, Payne, for a claim in redhibition; however, Payne and all claims against her were dismissed upon joint consent motion by this Court on August 30, 2018. See Record Document 50. Thus, the only claims at issue are Plaintiffs' claims against Branch for fraud and negligent representation. See Long v. Bruns, 31,427 (La App. 2d Cir. 1/20/99), 727 So. 2d 664, 667 ("The action for redhibition is between vendor and purchaser and cannot be maintained absent such relationship.").

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Geoscan, Inc. of Tx. v. Geotrace Techs., Inc., 226 F.3d 387, 390 (5th Cir. 2000). During this stage, courts must look to the substantive law underlying the lawsuit in order to identify which facts are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

---

[1] The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof [at trial]." See Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). The court should not, however, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.     Fraud Claim**

Branch moves for summary judgment on the ground, inter alia, that Plaintiffs cannot prevail on their fraud claim because the alleged conditions of the house that Plaintiffs claim Branch intentionally misrepresented to them were readily apparent and thus should have been discovered by Plaintiffs. See Record Document 34-1 at 5. Under Louisiana law, fraud is defined as a "misrepresentation or suppression of the truth made

with the intention to obtain an unjust advantage or to cause a loss or inconvenience to the other party." See La. C.C. art. 1953. To succeed on a fraud claim, a party must show: (1) a misrepresentation, suppression, or omission of true information; (2) an intent to either obtain an unjust advantage or cause damage or inconvenience to the other party; and (3) the error induced by fraud must relate to a circumstance substantially influencing consent to the contract. Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La. App. 2d Cir. 10/7/09), 22 So. 3d 246, 255 (citing Shelton v. Standard/700 Associates, 01–0587 (La. 10/16/01), 798 So. 2d 60). A defendant can defeat a fraud action by showing that the party claiming fraud could have ascertained the truth without difficulty or special skill. See La. C.C. art. 1954. However, this rule does not apply when "a relation of confidence has reasonably induced a party to rely on the other's assertions or representations." See id.; see also Henderson v. Windrush Operating Co., L.L.C., 47,659 (La. App. 2d Cir. 8/21/13), 128 So. 3d 283, 296 (stating that the jurisprudence demonstrates that a relation of confidence arises when the case involves a familial, marital, or fiduciary relationship) (emphasis added).

In this case, both parties dispute the extent to which the alleged conditions of the house were "easily discoverable" by the Plaintiffs before the closing of the sale. See Record Document 34-2 at 6, Defendant's Statement of Undisputed Material Facts; see also Record Document 42 at 2, Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts. The parties also dispute the key issue of whether Branch intentionally misrepresented material conditions of the house or declined to make Plaintiffs aware of such conditions. See Record Document 43 at 9-10. Furthermore, although both parties have offered proper summary judgment evidence in the form of

affidavits and deposition testimony in support of their positions, see id. at 11; Record Document 45 at 10-11, there nevertheless remains significant factual discrepancies regarding the events leading up to the closing of the sale at issue.[2]

Plaintiffs allege that Branch had knowledge of significant problems regarding the condition of the house because she represented Payne, the seller, as her agent in initially listing the house. See Record Document 43 at 16. Plaintiffs also maintain that Branch knowingly concealed information that would deter Plaintiffs in closing the sale of the house, specifically that Branch intentionally misrepresented information she had allegedly received from a licensed contractor who had inspected the "structural integrity" of the house. Id. at 10-11. Plaintiffs point to Branch's own deposition testimony for its claim that Branch not only did not send Plaintiffs a report of the contractor's findings but also that the contractor's inspection was in fact limited only to investigating the extent of any termite damage, as opposed to a full inspection of the porch, roof, and other conditions relating to the home's foundation. See id. at 9-10 (citing Deposition of Christy Branch, Exhibit L). Branch wholly denies these claims in her deposition and rejects Plaintiffs' contention that she either knew of any of the alleged problems with the house or that she in any way knowingly misrepresented information she had regarding its condition. See Record Document 45 at 11, 13.

Regarding the extent to which the alleged problems with the house were apparent to Plaintiffs during their initial viewing of the house with Branch, Branch argues that Plaintiffs could have readily discovered the problems such as the defective windows that could not be opened, the rotting wooden porch floor, mold-covered interior walls, a moist

---

[2] See infra note 4.

crawl space with a water-stained floor, and uninsulated plumbing under the house. See Record Document 34-1 at 19. Plaintiffs respond that the only time they viewed the house was during their initial 30-minute "walk through" with Branch and thus did not have sufficient time to discover the issues. See Record Document 43 at 17. Plaintiffs also point to the testimony of its expert, who conducted a full post-sale inspection of the house, that many of the issues complained of are problems that the "average homeowner wouldn't look at," such as testing the home's windows during a 30-minute walk through with a real estate agent. See Record Document 42 at 2-3; see also Record Document 34-1 at 16-17. Furthermore, Plaintiffs argue that, notwithstanding the Court's finding as to the apparent nature of the conditions, they were reasonable in relying on Branch's assertions regarding the house (or lack thereof) because Plaintiffs had a fiduciary relationship with Branch when she began representing them and thus this relationship qualified as a "relation of confidence" under article 1954 of the Louisiana Civil Code. See Record Document 43 at 9; La. C.C. art. 1954; see also Tres' Chic in a Week, LLC v. Home Realty Store, 07-1373 (La. App. 1st Cir. 7/17/08) 993 So. 2d 228, 231 ("The broker stands in a fiduciary relationship to his client and is bound to exercise reasonable care, skill, and diligence in the performance of his duties.").

Although Plaintiffs have not established that Branch knowingly misrepresented conditions of the house in order to prevail on their fraud claim, Branch's evidence, which may be viewed by a finder of fact as inconsistent,[3] is likewise insufficient to meet her initial

---

[3] For example, Plaintiffs point out several contradictory statements made by Branch regarding the alleged "home inspection" that she allegedly hired Mrs. Stanley to perform. Branch first stated that she emailed Stanley's inspection report to Plaintiffs due to concerns that Plaintiffs expressed to Branch about the property prior to closing. See Record Document 43 at 9 (citing Deposition of Christy Branch, Exhibit L). However,

burden as the movant in this summary judgment motion. See Vanguard Finance, Inc. v. Smith, 256 So. 2d 662, 664 (La. App. 4th Cir. 1972), writ denied, 260 La. 1205 (La. 1972) ("[F]raud must be proved by one who alleges fraud, but because of the nature of fraud it sometimes must be inferred from the existence of highly suspicious conditions or events."). Thus, because there exists a genuine dispute as to whether Branch had actual knowledge and the necessary intent, Branch's Motion for Summary Judgment as to Plaintiffs' fraud claim is **DENIED**.

C.  **Negligent Representation Claim**

Plaintiffs also maintain a negligent representation claim against Branch. To prevail on this claim, the relevant jurisprudence requires a plaintiff to prove: (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of that duty; and (3) that the breach caused damages to the plaintiff. See Long v. Bruns, 31,427 (La App. 2d Cir. 1/20/99), 727 So. 2d 664, 669. Similar to the fraud analysis described above, the cases have held that the knowledge of the realtor or broker is the key question for this analysis, and that the realtor only has a duty to disclose to buyers those defects of which he has knowledge. Id. (citing Nesbitt v. Dunn, 28,240 (La. App. 2d Cir. 4/3/96), 672 So. 2d 226). Furthermore, a buyer is precluded from recovering for negligent representation when the alleged representations relate to defects which are apparent or "discoverable on simple inspection, which [is] afforded the buyer before the sale, and where the buyer inspects the property before the sale." See id.

---

Branch then stated later that she could not recall if she had ever seen or sent such a report. See id. Finally, Branch's testimony was again contradictory when she stipulated with opposing counsel that no inspection had been performed of the home by a licensed home inspector prior to closing of the sale. See Record Document 55 at 4.

While one is an intentional tort and the other is grounded in negligence, the analysis applicable to a negligent misrepresentation claim largely mirrors the analysis for a fraud claim. Thus, the same reasons given above in Section II.B for denying summary judgment as to Plaintiffs' fraud claim warrant the same conclusion as to Plaintiffs' negligent representation claim. Specifically, the Court notes the overlap between the fraud element requiring a misrepresentation, suppression, or omission of true information on the part of a defendant and the negligent misrepresentation element of a legal duty on the party of a defendant to supply correct information. Moreover, a key consideration as to both claims in the context of real estate transactions is whether the alleged defects were readily apparent or discoverable on simple inspection. See supra at 4-5, 8. Genuine disputes of material fact as to these issues prevent summary judgment on both the fraud and negligent misrepresentations claims. See Murphy's Lease & Welding Service, Inc. v. Bayou Concessions Salvage, Inc., 00-978 (La. App. 3d Cir. 3/8/01), 780 So. 2d 1284, 1289 ("[I]ssues pertaining to subjective facts such as intent, knowledge, motive, malice, or good faith are usually not appropriate to a summary judgment determination."). For these reasons, Branch's Motion for Summary Judgment as to Plaintiffs' negligent representation claim is likewise **DENIED**.

Accordingly, the parties' conflicting summary judgment evidence using issues of witness credibility precludes summary judgment in favor of Branch. This Court is not permitted to make credibility determinations or weigh the evidence in the record and thus properly leaves such questions for a jury to decide. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

III. **CONCLUSION**

Based on the foregoing reasons, Branch's Motion for Summary Judgment (Record Document 34) is **DENIED**. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this 12th day of October, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT